**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ANTOINETTE WOODARD, individually and on behalf of all others similarly situated, | |
| Plaintiff, | No. 23 CV 5246 |
| v. | Judge Georgia N. Alexakis |
| SMARTMATCH INSURANCE AGENCY, LLC, | |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Antoinette Woodard filed a class action complaint against defendant SmartMatch Insurance Agency, LLC under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*. She alleged that defendant made at least two unwanted telemarketing calls to her, even though her phone number is listed on the national do-not-call registry. *See* 47 C.F.R. §64.1200(c)(2). In response, defendant contends that plaintiff's claims are subject to a mandatory arbitration clause and moves to compel arbitration and dismiss the complaint [15]. For the reasons stated below, defendant's motion is denied without prejudice.

**I.**

This motion hinges upon the formation of an arbitration agreement. Defendant claims that an agreement was formed when "a website user identifying herself as [plaintiff]" used an iPhone to access a website owned by Digital Media Solutions, LLC

("DMS"). [15-1] ¶ 6. The website touted the chance to win $25,000 in exchange for completing a survey of personal information. *Id.* ¶ 8. Defendant asserts that this "website user" was, in fact, plaintiff. *Id.* ¶ 14. According to defendant, plaintiff registered for the sweepstakes by entering her name, address, email, and phone number into the survey, checking a box agreeing to hyperlinked Terms of Service ("TOS"), and hitting "CONTINUE." *Id.* ¶¶ 6, 11, 14.[1] The hyperlinked TOS led to a page which included the arbitration agreement at issue. *Id.* ¶ 11; [15-2] at 2. Defendant contends that, by checking the box and clicking "CONTINUE," plaintiff entered into an arbitration agreement with DMS and its third parties—including defendant. [16] at 10.

For her part, plaintiff alleges that she never visited DMS's website, never registered for the $25,000 sweepstakes, never submitted her personal information to DMS, and never agreed to DMS's TOS. [19-1] ¶¶ 4, 6, 8, 15. And in any event, she argues, the "website user" could not possibly have been her: She owned a Samsung Android—not an iPhone—on the date of submission. [19] at 3.

## II.

At the outset, the Court must answer the threshold question posed by defendant's motion: Who determines whether the parties agreed to arbitrate? Defendant says that it is the arbitrator. Plaintiff says that it is this Court.

---

[1] Defendant's supporting declaration alternatively suggests that the information may not have been submitted but could have been "otherwise captured by the website as part of the website visit." *Id.* ¶ 6. The parties did not discuss this suggestion and, in any event, it is irrelevant to the resolution of the present motion.

Defendant is correct that questions of validity, waiver, and enforceability of arbitration agreements are within the arbitrator's wheelhouse. *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002) ("[T]he presumption is that the arbitrator should decide allegations of waiver, delay, or a like defense to arbitrability."). But it is this Court, not the arbitrator, that determines whether the parties actually formed a contract to arbitrate. *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010) ("It is similarly well settled that where the dispute at issue concerns contract formation, the dispute is generally for courts to decide."); *K.F.C. v. Snap Inc.*, 29 F.4th 835, 837 (7th Cir. 2022) ("Even the most sweeping delegation cannot send the contract-formation issue to the arbitrator, because, until the court rules that a contract exists, there is simply no agreement to arbitrate."); *Janiga v. Questar Cap. Corp.*, 615 F.3d 735, 742 (7th Cir. 2010) ("[T]he court must decide whether a contract exists before it decides whether to stay an action and order arbitration.").

Defendant misapprehends the Supreme Court's decision in *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63 (2010). Defendant is correct that, to challenge the validity of an arbitration agreement, the party opposing arbitration must challenge the delegation clause. [21] at 3. But in reading *Rent-A-Center*, defendant misses a crucial footnote: "The issue of 'validity' is different from the issue whether any agreement between the parties 'was ever concluded.'" *Id.* at 70 n.2 (citing *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 n.1 (2006) ("The issue of the contract's validity is different from the issue whether any agreement between the alleged obligor and obligee was ever concluded. Our opinion today addresses only the

former.")). Here, plaintiff does not challenge the validity of the agreement: She challenges whether an agreement was ever formed. In other words, that plaintiff did not take issue with the delegation clause at this juncture of the litigation is not fatal to her argument.[2]

So it is up to this Court to determine whether the parties agreed to arbitrate.

## III.

Arbitration is a matter of contract. *Id.* at 66. To compel arbitration, the party seeking arbitration—here, defendant—must offer sufficient evidence to allow a factfinder to conclude that the parties contracted to arbitrate. *Melvin v. Big Data Arts, LLC*, 553 F. Supp. 3d 447, 450 (N.D. Ill. 2021) (citing *Tinder v. Pinkerton Security*, 305 F.3d 728, 735 (7th Cir. 2002)). To avoid arbitration, the opposing party—here, plaintiff—must then identify facts showing a genuine dispute as to the existence of a contract. *Id.*; *see also Van Tassell v. United Mktg. Grp.*, LLC, 795 F. Supp. 2d 770, 787 (N.D. Ill. 2011) ("[T]he party must identify specific evidence in the record demonstrating a material factual dispute for trial.") (cleaned up). The Court applies a standard akin to summary judgment and draws all reasonable inferences

---

[2] To support its argument that "it is well-established that challenging the entire contract as a whole and not the delegation clause is insufficient to bring arbitrable questions back within the Court's province," defendant relies almost exclusively on *Nelums v. America's Lift Chairs, LLC*: an out-of-circuit, unpublished district court case. 2023 WL 6161997 (N.D. Ohio Sept. 21, 2023); *see also* [21] at 1-2, 3, 4 (defendant maintains that "[a]rguments such as the ones Plaintiff posits have been rejected countless times and Courts in the Seventh Circuit routinely enforce arbitration agreements in similar circumstances."). But *Nelums* does not bind this Court. Moreover, it is in significant tension with cases from this Circuit and district. *See, e.g., Janiga*, 615 F.3d at 742; *Mohammed v. Uber Tech. Inc.*, 237 F. Supp. 3d 719, 728 (N.D. Ill. 2017).

in the opposing party's favor. *Id.*; *Hoganberry v. Experian Information Solutions, Inc.*, 703 F. Supp. 3d 854, 861 (N.D. Ill. 2023).

State law governs contract formation. *K.F.C.*, 29 F.4th at 837.[3] In Illinois, arbitration agreements are analyzed using ordinary principles of contract law. *Carey v. Richards Bldg. Supply Co.*, 367 Ill. App. 3d 724 (2d Dist. 2006). That analysis begins by addressing whether the "basic ingredients of a contract"—offer, acceptance, and consideration—are present. *Id.*

Here, the parties dispute whether these "basic ingredients" are present. Defendant argues that, when plaintiff entered her personal information to DMS's website in pursuit of the $25,000 sweepstakes, she accepted the TOS that included the arbitration agreement. [16] at 10. Plaintiff, on the other hand, maintains that she never visited DMS's website, never entered her personal information, and never agreed to DMS's TOS. *See generally* [19-1]. She also contends that, because she used an Android phone at the relevant time but the website was accessed via an iPhone, she could not possibly be the "website user." [19] at 7. Defendant does not address plaintiff's sworn declaration in its reply, and instead summarily states that plaintiff "agreed explicitly" to the terms of service. [21] at 5. But this statement makes a number of unsupported presumptions, the most obvious being that it was plaintiff—and not some unknown third party—who submitted the survey.

---

[3] There is a question here about whether Illinois or New York law applies; this Court will not dwell on it, because there is no difference among the law of either state that would be dispositive to this motion. *Janiga*, 615 F.3d at 742; [21] at 3 (defendant acknowledges no substantive difference between Illinois and New York law).

Plaintiff's declaration is sufficient to satisfy her evidentiary burden at this stage of the litigation. *See Kass v. PayPal, Inc.*, 75 F.4th 693, 704 (7th Cir. 2023) (when plaintiff declared that she never received an email with defendant's arbitration terms, she raised a triable issue of fact as to whether a valid arbitration agreement was formed); *Van Tassell*, 795 F. Supp. 2d at 789 ("[T]he Court denies Defendants' joint motion to compel arbitration without prejudice because there is a genuine issue of material fact pertaining to whether Plaintiffs ever viewed the enrollment web pages containing the Terms and Conditions upon which Defendants rely.").

Because plaintiff has identified facts showing a genuine dispute as to her acceptance of defendant's arbitration agreement, defendant's motion to compel arbitration is denied without prejudice.

## IV.

When, as here, the existence of an arbitration agreement is genuinely disputed, that dispute proceeds to trial. 9 U.S.C. § 4 (the court may conduct a bench trial unless the party opposing arbitration demands a jury trial). In keeping with the approach that past district courts have taken,[4] the Court first will allow the parties to conduct limited discovery on the existence of an agreement to arbitrate. Once that limited discovery is complete, the Court will then conduct a status conference to determine whether defendant intend to renew its motion to compel in light of any evidence

---

[4] *See, e.g., Bradley v. Meijer Stores L.P.,* 2023 WL 3042984, at *3 (N.D. Ill. Apr. 21, 2023) ("It is only fair, then, that courts afford a party denying the existence of an arbitration agreement some opportunity to bolster their denial through targeted discovery."); *Burks v. Wal-Mart Stores, Inc.*, 2013 WL 4777358, at *2 (N.D. Ill. Sept. 5, 2013) ("Limited discovery may be necessary before a court can rule on a properly contested motion to compel arbitration.").

6

collected via discovery that it believes eliminates the need for a trial or whether a trial (jury or bench) is the required next step. *Hoganberry*, 703 F. Supp. 3d at 861-62.

This matter is referred to the assigned magistrate judge for the purpose of overseeing limited discovery on the existence of an agreement to arbitrate—namely, whether plaintiff entered into an agreement to arbitrate. To the extent further factual development is necessary on this next point, the magistrate judge may also oversee limited discovery on whether defendant can enforce any agreement to arbitrate as a non-signatory to the agreement. *See Thompson v. AT&T Serv., Inc.*, 2018 WL 4567714 at *7-8 (N.D. Ill. Sept. 24, 2018) (ordering discovery on arbitrability where plaintiff contested defendant's ability to enforce an arbitration agreement as a non-signatory); *but see* [16] at 12-15; [19] at 10-13; and [20] at 6-10 (disputing whether defendant can enforce the arbitration agreement as non-signatory, yet doing so based on the plain language of the agreement). Finally, to the extent the parties would find it productive to engage in a settlement conference, this referral also gives the magistrate judge authority to conduct one.

Georgia N. Alexakis
United States District Judge

Date: September 20, 2024